UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VOLVO GROUP NORTH AMERICA, LLC d/b/a VOLVO TRUCKS NORTH AMERICA, a Delaware limited liability company, <br><br>      Plaintiff,<br><br>      and<br><br>KENWORTH TRUCK COMPANY, a Division of PACCAR INC., a Washington corporation,<br><br>      Plaintiff-in-Intervention,<br><br>v.<br><br>TRUCK ENTERPRISES, INC., a Virginia corporation; JAMES E. HARTMAN; TRUCK ENTERPRISES ROANOKE, INC., a Virginia corporation; TRUCK ENTERPRISES LYNCHBURG, INC., a Virginia corporation; and TRUCK ENTERPRISES HAGERSTOWN, INC., a Virginia corporation,<br><br>      Defendants. | Civil Action No. 7:18-cv-00043-EKD |

**MEMORANDUM OPINION**

This matter relates to James Hartman's continued efforts to sell his truck dealerships. In a prior suit between the same parties, *Volvo Group North America, LLC v. Truck Enterprises, Inc.*, No. 7:16-cv-25 (W.D. Va.) (*Volvo I*), this court issued an opinion on cross-motions for summary judgment concerning the scope of Volvo Trucks North America, LLC's (Volvo) contractual and statutory rights of first refusal as related to a 2015 business deal intended to transfer ownership of defendants' truck dealerships to a proposed purchaser. Defendants

appealed, and the Fourth Circuit affirmed. *Volvo Group N. Am., LLC v. Truck Enters., Inc.*, 723 F. App'x 237 (4th Cir. May 25, 2018).

While that appeal was pending, defendants entered into a differently structured deal with the same proposed purchaser (the 2018 Stock Purchase Agreement or the 2018 Deal). Volvo filed suit and sought preliminary injunctive relief to stop the 2018 Deal from going forward until the court resolves the claims in this case. On September 30, 2018, the court issued a memorandum opinion and order granting Volvo's motion for a preliminary injunction. (Dkt. No. 45.)

Now before the court is defendants' motion to dismiss. Defendants argue that this matter is moot because they have now abandoned the 2018 Stock Purchase Agreement. (*See* Dkt. No. 50-1, Defs.' Brief, Ex. 1.) However, there still exists a live controversy as to whether defendants' execution of the 2018 deal constitutes a breach of the various Dealer Sales and Service Agreements entered into with defendants. Therefore, defendants' motion will be denied.

I. BACKGROUND

For a more complete factual background regarding this dispute, interested readers are directed to the court's summary judgment ruling in *Volvo I*, 2017 WL 1483431 (W.D. Va. Mar. 31, 2017), and the court's preliminary injunction order in the instant case. (Dkt. No. 45.)

This case—just like *Volvo I*—arose from the proposed sale of a group of mid-Atlantic commercial-truck dealerships. Defendants Truck Enterprises, Inc., James E. Hartman, Truck Enterprises Roanoke, Inc., Truck Enterprises Lynchburg, Inc., and Truck Enterprises Hagerstown, Inc. (collectively, Dealers) own and operate commercial-truck dealerships across three states—Maryland, Virginia, and West Virginia. A number of the dealerships sell two brands of trucks and are referred to as "dualed dealerships" in the commercial-truck business.

Five of the dealerships sell Volvo trucks. The proposed buyer in this case—Transportation Equipment Company, Inc. (TEC)—was also the proposed buyer in *Volvo I*.

Volvo alleges, as it did in the first suit, that the proposed sale fails as a bona fide offer under Volvo's Dealer Sales and Service Agreements. (Complaint ¶ 15, Dkt. No. 1; Dealer Sales and Service Agreements, Exhibits 7–10, Dkt. Nos. 1-9, 1-10, 1-11, 1-12.) Volvo moved for a preliminary injunction staying all contractual and statutory deadlines applicable to Volvo and its rights of first refusal, and to restrain and enjoin defendants from selling under the 2018 Deal "or any other contract thereafter until such time as . . . this Court's order relative to [Volvo's] rights as determined and declared in this proceeding." (Dkt. No. 5, Pl.'s Mo. Prelim. Inj. 3.)

In its order granting Volvo's motion for a preliminary injunction, the court found that there were two aspects of the 2018 Deal which demonstrated that the 2018 Stock Purchase Agreement likely was not a bona fide offer. (Dkt. No. 45, 9/30/18 Mem. Op. & Order 9–12.) First, the agreement specifically provided that "if Volvo chooses to purchase the Volvo assets, the purchase cannot proceed unless the proposed buyer, TEC, also completes its separate purchase." (*Id.* at 9.) This provision was objectionable because it made "Volvo's right of first refusal contingent on . . . actions by the Dealers and the proposed purchaser." (*Id.* at 10.) Second, the 2018 Deal did not "allocate the goodwill attributed to each Volvo franchise." (*Id.* at 11.) The court explained that Volvo has four separate Dealership Agreements and thus four separate rights of refusal. (*Id.*) "Volvo must be able to exercise those rights independently and know the amount it is paying for the dealerships in each Dealership Agreement so that it can determine—for each one—whether it wants to exercise its right of first refusal." (*Id.*) For these reasons, the court concluded that the 2018 Stock Purchase Agreement "likely is not a bona fide

offer under the Dealership Agreements and thus . . . Volvo has clearly shown a likelihood of success on the merits, at least as to its breach of contract claim." (*Id.* at 12.)[1]

The court further found that Volvo was likely to suffer irreparable harm if the 2018 Stock Purchase Agreement was consummated. "[A]llowing the 2018 Deal to go forward, when it is likely not a bona fide offer, would force Volvo to exercise those rights before the court can determine if the 2018 Deal is a bona fide offer or miss out on the opportunity to do so, thereby losing its rights of first refusal." (*Id.*) Given the "ongoing harm that would occur as a result of either of those scenarios, it would be difficult—if not impossible—to calculate the precise monetary harm as a result of either scenario." (*Id.*)[2]

During a status conference call on January 24, 2019, defendants informed the court that they intend to pursue another sale to TEC under a yet-to-be-determined agreement. (*See* Dkt. No. 48; Dkt. No. 53, Volvo's Resp. 3–4.) The court suggested during the status conference that defendants and TEC work with Volvo before they attempt to re-contract. (*See* Volvo's Resp. 5 n.3.) On February 1, 2019, Defendants filed the motion to dismiss now before the court, arguing that this action is moot due to their abandonment of the 2018 Stock Purchase Agreement. (Dkt. No. 49.) Attached to their brief is an executed "CONSENT TO TERMINATION" of the January 12, 2018 Stock Purchase Agreement between TEC and Mr. Hartman. (Dkt. No. 50-1.)

---

[1] The court explained that the complaint "also seeks a declaration of the parties' respective rights and obligations under the statutory provisions governing rights of first refusal," but "for purposes of the preliminary injunction," the court did not reach the statutory claims because it concluded that Volvo showed "a likelihood of success as to its breach of contract claim." (9/30/18 Mem. Op. & Order 8.)

[2] Under the remaining preliminary injunction factors, the court noted that there was argument at the hearing concerning Mr. Hartman's desire to sell his dealerships so that he can retire. The court acknowledged that its ruling would cause some harm to Mr. Hartman, but if, as the court believed was likely, the 2018 Stock Purchase Agreement constituted a breach of the Dealer Agreements, then "any harm to Mr. Hartman is really a result of defendants' failure to structure the 2018 Deal in a way that does not breach the agreement. For these reasons, the court concludes that the balance of equities favors Volvo." (9/30/18 Mem. Op. & Order 13.) Finally, the court found that maintaining the status quo would serve the public interest in enforcing contractual and statutory obligations. (*Id.*)

Defendants' briefs are silent about their future plans, but defendants do not dispute Volvo's assertions about their desire to re-contract with TEC.

## II. DISCUSSION

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he "possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)). This requirement "ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.* An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans v. Official English v. Arizona*, 520 U.S. 43, 67 (1997). If "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

Under these principles, a case must be dismissed as moot when the court's "resolution of an issue could not possibly have any practical effect on the outcome of the matter." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010). A controversy is moot if it lacks "one of the three required elements of Article III standing: (1) injury-in-fact, (2) causation, or (3) redressability." *Townes v. Jarvis*, 577 F.3d 543, 546–47 (4th Cir. 2009); *see also Mohammed v. Holder*, 695 F. Supp. 2d 284, 289 (E.D. Va. 2010) ("[T]he mootness doctrine

5

requires that a claimant suffer an injury-in-fact or continuing collateral consequence that is fairly traceable to the challenged action or decision, and that a favorable decision would be likely to redress the injury.").

In its order granting Volvo's motion for a preliminary injunction, the court found that the 2018 Stock Purchase Agreement likely was not a bona fide offer and thus that Volvo is likely to succeed on the merits of its breach of contract claim. That claim is not mooted by defendants' abandonment of the 2018 Deal. As the court explained in *Volvo I*, if the proposed agreement "is not a bona fide offer, then it is 'an agreement not subject to the Company's rights under [Article 9],' and Section 9.3.5 provides Volvo remedies." 2017 WL 1483431, at *5. Under that section Volvo may terminate the agreement, refuse to acknowledge the transferee as an authorized dealer, exercise its right of first refusal notwithstanding the timing provisions of Section 9.3.2, and obtain equitable relief in court "to compel the recognition of Company's right of first refusal, or the performance thereof . . . ." *Id.* At least one of those remedies—the option to terminate the dealer agreements—does not depend on a currently-pending agreement to transfer ownership of defendants' truck dealerships. (*See* Section 9.3.5, Dkt. No. 1-9 at 47.) Thus, Volvo still has a legally cognizable interest in the outcome of this action.

In addition, Volvo argues defendants' abandonment of the 2018 Deal did not render this action moot because Volvo's right of first refusal ripened into an irrevocable option, an option that can be exercised at any time during the currently-stayed[3] sixty-day period allowed to exercise that right under the dealer agreements. Courts have held that a right of first refusal, coupled with a mandatory time provision and the absence of any language pertaining to the continued existence of a sales agreement, can create an irrevocable option to purchase. *See, e.g.*,

---

[3] The court stayed the contractual sixty-day period pending the court's decision on the merits of Volvo's claims in this case. (9/30/18 Mem. Op. & Order 15.)

*Glick v. Chocurua Forestlands Ltd. P'ship*, 949 A.2d 693, 701 (N.H. 2008) ("Given the mandatory nature of this time provision, as well as the lack of any language conditioning Glick's purchasing power upon the continued existence of the P&S Agreement, we hold that the Agreement granted Glick an irrevocable thirty-day option to purchase the Masonian lots."). Other courts have explained that a right of first refusal, once triggered, does not transform into a binding option because such a rule "does not comport with 'general principles of contract law or with the theory of first refusal rights.'" *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 3:16-cv-2470, 2018 WL 1035767, at *10 (M.D. Penn. Feb. 23, 2018) (quoting *Lin Broadcasting Corp. v. Metromedia, Inc.*, 542 N.E. 2d 629, 633 (N.Y. 1989)); *Shower v. Fischer*, 737 P.2d 291, 293–94 (Wash. Ct. App. 1987) (indicating that a right of first refusal only gives the holder the power to purchase for so long as the underlying third-party contract is in existence). The court is not well-positioned to resolve this legal issue, especially because it was not briefed or framed in terms of Virginia or Maryland law. *See Volvo I*, 2017 WL 1483431, at *3 ("The court therefore construes these dealership agreements under Virginia and Maryland law."). For now, it is enough to say that this action is not moot because of the remedies set forth in Section 9.3.5.[4]

---

[4] As stated above, one of those remedies is the option to "exercise the right of first refusal notwithstanding 9.3.2, above." (Section 9.3.5, Dkt. No. 1-9 at 47.) In other words, the dealer agreements allow Volvo to exercise its right of first refusal when the proposed sale is a bona fide offer and also when the dealer signs "an agreement not subject to the Company's rights under this Article." (Section 9.3.5, Dkt. No. 1-9 at 46.) The court expresses no opinion as to whether, under either scenario, the 2018 Stock Purchase Agreement triggers an irrevocable purchase option.

## III. CONCLUSION

For the foregoing reasons, the court concludes that this action is a live controversy and is not moot. Therefore, the court will deny defendants' motion to dismiss the complaint as moot. The court will enter an appropriate order.

Entered: September 12, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge